IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHIMERA INVESTMENT COMPANY,<br>Plaintiff,<br><br>vs.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:05-CV-114 TC |

In this insurance coverage dispute, Chimera Investment Company ("Chimera") seeks to recover insurance proceeds for a default judgment that was entered in state court against the Coalition Lodge Condominium Homeowners Association of Unit Owners ("Association"), the insured of Defendant State Farm Fire & Casualty Company ("State Farm"). This matter comes before the court on the parties' cross motions for summary judgment.

Chimera claims to be the assignee of Fidelity Funding Company, who obtained the default judgment against the Association. Chimera also claims to be the assignee of the Association. State Farm contends that there is no coverage under the policy for two reasons. First, State Farm argues that the allegations in Fidelity's Amended Complaint did not give rise to coverage under the policy. Second, State Farm argues that because it was not provided with notice of the state lawsuit until after the default judgment had been entered, the notice requirements of the policy were not met and the resulting prejudice precluded any coverage under

the policy.

The court agrees with State Farm. Accordingly, for the reasons set forth below, the court grants State Farm's Motion for Summary Judgment and denies Chimera's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In this case, Chimera filed suit against State Farm, alleging to be the assignee and real party in interest to the claims brought in state court by Fidelity against the Association, a State Farm insured.[1] Chimera also alleges that Fidelity was also a first-party insured under the State Farm policy. Chimera further alleges that the default judgment obtained by Fidelity was a covered loss under the policy. Chimera asserts that State Farm is liable for the full amount of the default judgment entered against Coalition Lodge, $736,889.26, with interest accruing on $585,425.00 from December 28, 2004, at 7.34% per year, plus attorney fees and costs; or alternatively in a sum certain principal amount of $232,000.00, plus statutory interest from June 15, 2001.

### A. Background Facts

Coalition Lodge Condominiums is a condominium complex consisting of seven separate units and a common area, located at 1300 Park Avenue, Park City, Utah. Marguerite Johnson is a former record owner of multiple units in the Coalition Lodge Condominiums, including Unit 2. Through a foreclosure sale, Fidelity Funding Company became the record owner of Unit 2, along with a proportionate share of the common area. During this time, the Coalition Lodge

---

[1]The state court case is styled Fidelity Funding Company v. Marguerite Johnson, et al., Civil No. 000600335, Third District Court, Summit County, Utah.

Condominiums were managed by Marguerite Johnson's son, Max Johnson, Jr., and attorney, Ruth Wagner.

**B. The Lawsuit in State Court**

After Fidelity Funding secured ownership of Unit 2, disputes arose between Fidelity Funding and Marguerite Johnson, Max Johnson, and Ruth Wagner over the management and control of Unit 2. These disputes resulted in the filing of a lawsuit on December 28, 2000, by Fidelity in the Third District Court, Summit County, Utah, against Marguerite Johnson, Max Johnson Jr., Ruth Wagner, Coalition Lodge Condominiums, Coalition Condos, Coalition Lodge Condominiums Association of Unit Owners, C.C. Family Trust and Does 1-10. On April 16, 2001, the State Court entered a Judgment By Default against the defendants. This Judgment was eventually set aside based on a motion filed by attorney Ruth Wagner, who was also a named-defendant.

On May 15, 2001, Fidelity filed an Amended Complaint. Fidelity's Amended Complaint alleged claims for Forcible or Unlawful Entry or Detainer, Trespass, Private Nuisance, Conversion, Quiet Title, Breach of Fiduciary Duty, Slander of Title, Intentional Interference with Economic Relations, Declaratory and Injunctive Relief, Punitive Damages, and Relief against Fraudulent Transfer. On or about May 18, 2001, Ruth Wagner filed an answer to Fidelity's Amended Complaint on behalf of herself, Marguerite Johnson, Max Johnson Jr., and the Coalition Lodge Condominium Homeowners Association of Unit Owners.

On May 22, 2001, Fidelity moved for partial summary judgment. The defendants did not respond to Fidelity's motion, and on August 31, 2001, the trial court granted the motion. Previously, on July 3, 2001, Fidelity moved for the entry of a Rule 26(f) discovery order. On

July 12, 2001, the trial court entered a discovery order and required the parties to exchange initial disclosures within ten calendar days from the date of the order. On September 21, 2001, Fidelity filed a motion to compel discovery and for Rule 37 sanctions against the defendants. Fidelity alleged that the defendants had disobeyed the trial court's discovery order, had served untimely and deficient responses to written discovery propounded by Fidelity and had still not made their Rule 26(a)(1) disclosures. As part of its motion, Fidelity requested that the trial court order the defendants to fully respond to its written discovery and that if the defendants failed to comply, that the court strike the defendants' pleadings and enter a default judgment against them.

On November 29, 2001, the trial court entered an order granting Fidelity's Motion to Compel and for Rule 37 Sanctions. The order, which was entered as a final judgment, states that the defendants had failed to comply with two separate court orders, had failed to serve their Rule 26(a)(1) disclosures, and had failed to provide full and complete responses to Fidelity's discovery requests. The court then ordered the defendants' answers to Fidelity's Amended Complaint stricken, and entered a judgment by default against them. The grand total of the default judgment entered by the trial court on November 29, 2001 against the defendants was $626,367.05.

**C. Notice to State Farm of the Lawsuit in State Court.**

One of the Defendants in the state court action—the Coalition Lodge Condominium Homeowners Association of Unit Owners ("Association")—was insured by State Farm. After Fidelity funding obtained a judgment in state court against the Association, Fidelity sought payment under the policy for the Association's obligation to pay damages. On December 27, 2001, Fidelity faxed a copy of its Amended Complaint to State Farm insurance agent, Dottie Boardman. State Farm's claims office acknowledged receipt of Fidelity's lawsuit/claim the next

day, on December 28, 2001. This was the first notice State Farm received of the Fidelity lawsuit.

After receiving notice of the lawsuit, and after completing its analysis regarding coverage issues, State Farm notified the defendants that there was no coverage for the defense or indemnification of the lawsuit filed by Fidelity. Specifically, State Farm explained that coverage was being denied because (1) the allegations asserted by Fidelity did not fall within the coverage provided under the policy, and (2) because, even assuming there was coverage, any coverage was excluded because State Farm had been prejudiced by the insured's failure to provide prompt notice of the lawsuit.

On February 28, 2002, Fidelity wrote to State Farm seeking payment, both as a judgment creditor and as an assignee of the Association, for the default judgment entered against the defendants in the state case.

**D. The Language of the State Farm Policy**

The State Farm policy issued to the Association, under which Chimera seeks coverage, provides in pertinent part:

> **SECTION II**
> **COMPREHENSIVE**
> **BUSINESS LIABILITY**
>
> **COVERAGE L -**
> **BUSINESS LIABILITY**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplement Payments. This insurance applies only:

1. to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period.

2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

3. to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

---

**RIGHT AND DUTY**
**TO DEFEND**

We will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent. The amount we will pay for damages is limited as described in Limits of Insurance. Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury. We may investigate and settle any claim or suit at our discretion. Our right and duty to defend end when we have used up to the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

. . . .

**BUSINESS**
**LIABILITY**
**EXCLUSIONS**

Under Coverage L, this insurance does not apply:

1. to **bodily injury** or **property damage**:

a. expected or intended from the standpoint of the insured; or

b. to any person or property which is the result of willful and malicious acts of the insured.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property;

. . . .

16. to **personal injury** or **advertising injury**:

a. arising out of oral or written publication of material if done or at the direction of the insured with knowledge of its falsity;

b. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

c. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

d. for which the insured has assumed liability in a contract or agreement. This part of this exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement.

. . . .

**SECTION II GENERAL CONDITIONS**

**GENERAL CONDITIONS**

. . . .

3. **Duties in the Event of Occurrence, Claim or Suit.**

a. You must see to it that we are notified promptly of an occurrence that may result in a claim. Notice should include:

(1) how, when and where the occurrence took place; and

(2) the names and addresses of any injured persons and witnesses.

b. If a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

c. You and any other involved insured must:

(1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit:

(2) authorize us to obtain records and other information;

(3) cooperate with us in the investigation, settlement or defense of the claim or suit; and

(4) assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**SECTION II**
**DEFINITIONS**

This section contains the definitions of the words printed in bold face in Section II of this policy. It is an integral part of the policy. The definitions appearing below will be applied as if they were included each time the words they define are used in Section II of this policy.

. . . .

1. **advertising injury** means injury arising out of one or more of the following offenses:

a. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. oral or written publication of material that violates a person's right of privacy.

c. misappropriation of advertising ideas or style of doing business; or

d. infringement of copyright, title or slogan;

. . . .

3. **bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness or disease at any time;
. . . .

11. **occurrence** means:

a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or

b. the commission of an offense, or series of similar or related offenses, which results in **personal injury** or **advertising injury**.

For purposes of this definition, **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property will be considered an accident;

12. **personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment;

b. malicious prosecution;

c. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. oral or written publication of material that violates a person's right of privacy;

. . .

15. **property damage** means:

a. physical injury to or destruction of tangible property, including all resulting loss of use of that property. All such loss of use will be considered to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use will be

considered to occur at the time of the occurrence that caused it.

## ANALYSIS

Chimera seeks to recover insurance proceeds for the default judgment entered in state court against State Farm's insured, the Association. Chimera claims to be the assignee of Fidelity Funding with respect to the underlying judgment, as well as the assignee of Coalition Condos with respect to the State Farm insurance policy.[2] State Farm argues that there is no coverage under the policy for two reasons. First, State Farm argues that the allegations in Fidelity's Amended Complaint did not give rise to coverage under the policy. Second, State Farm argues that because it was not provided with notice of the lawsuit until after a final judgment had been entered, the notice requirements of the policy were not met and the resulting prejudice precludes any coverage under the policy.

### A. Notice

The Court agrees with State Farm that the notice requirements of the policy were not met and that State Farm was substantially prejudiced by the insured's lack of timely notice. See, e.g., F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1545-46 (10th Cir. 1994) (interpreting Utah law and holding that noncompliance with notice provision in insurance policy may defeat coverage if there is showing of substantial prejudice to insurer).

In this case, Fidelity filed suit against State Farm's insured on December 28, 2000, just two months after the State Farm policy when into effect. But State Farm was not notified of the

[2] While Chimera alleges to be the assignee of the Association's rights under the State Farm policy, Chimera concedes that its rights under the policy, if any, can be no greater than that of the named insured's.

lawsuit until one year later, on December 27, 2001.[3] State Farm learned that during the state court litigation, a default judgment was entered against the insured for failure to file an answer to Fidelity's complaint, failure to oppose a motion for partial summary judgment, failure to answer discovery, failure to obey a court order compelling discovery, and failure to oppose a motion for sanctions which resulted in a second default judgment being entered as a final judgment against it in the amount of $626,367.05.

The State Farm policy provides, in relevant part, that "[i]f a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit." (State Farm Policy at § II.3.b (emphasis added).) The policy further requires that the insured "immediately send [State Farm] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit; . . . ." (Id. § II.3.c (emphasis added).) Based on the facts of this case, the court finds that the insured clearly failed to satisfy the notice requirements of the State Farm policy. The Court further finds that the insured's failure to satisfy the notice requirements unquestionably resulted in substantial prejudice to State Farm.

The decision of the Missouri Supreme Court in Johnston v. Sweany, 68 S.W.3d 398 (Mo. 2002), is illustrative and persuasive. As it was in Johnston, here the insured's failure to provide State Farm with notice of the Fidelity lawsuit until after a second default judgment had been

---

[3]At the hearing, Chimera correctly noted that State Farm's evidence regarding notice was not authenticated and so was not admissible. Because the court was hearing cross motions on an issue amenable to summary judgment, the court gave both sides an opportunity to supplement the record. This was done. State Farm has provided the necessary authentication for its evidence that it did not receive notice before December 27, 2001. (See Aff. of Dorothy Boardman; Aff. of Brent Spradley.) No evidence has been presented by Chimera to rebut the now undisputed fact that State Farm did not receive notice before December 27, 2001.

entered as a final judgment presented State Farm with a "fait accompli." Id. at 402. Before State Farm received notice of the Fidelity claim, the insured had failed to cooperate in discovery, had failed to respond to motions, and had disobeyed court orders. As a result, a default judgment was entered against it two separate times. Not only did the insured's actions deprive State Farm of the opportunity seek a judicial determination regarding coverage through a declaratory judgment action before entry of a final judgment, but it also deprived State Farm of the opportunity to dispute the amount of damages or investigate the claim before entry of judgment. Because the insured failed to comply with the notice requirements of the State Farm policy, and because the prejudice suffered by State Farm is clear on its face,[4] the Court finds that there is no coverage for the claims made by Fidelity in the underlying lawsuit. Accordingly, State Farm is entitled to summary judgment.

**B. Coverage**

While the court finds that State Farm's denial of coverage was proper based on the insured's failure to provide State Farm with timely notice and the resulting prejudice State Farm suffered, the Court also finds that State Farm's denial of coverage was proper based on the lack of a covered claim. For the reasons set forth in State Farm's briefs, the court alternatively holds that even if the insured provided timely notice of the Fidelity lawsuit to State Farm, the allegations set forth in Fidelity's Amended Complaint do not allege a claim for which the State Farm policy provides coverage.

---

[4]The court notes that, given the insured's behavior in the state court suit and the resulting default judgment, State Farm would be fighting a difficult, if not impossible, battle to convince the trial court to set aside the default judgment.

**ORDER**

For the foregoing reasons, the Court GRANTS State Farm's Motion for Summary Judgment (Dkt # 25) and DENIES Chimera's Motion for Summary Judgment (Dkt # 37).

IT IS SO ORDERED this 28th day of September, 2006.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
United States District Judge